# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6043 | **DATE** | August 26, 2004 |
| **CASE TITLE** | *Woolner v. Flair* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)  ☐  [Other docket entry] For the reasons set forth in the attached Memorandum and Order, the Court GRANTS Defendants' Motion for Summary Judgment [52-1] as to all counts and claims except for Ms. Woolner's claim for hostile environment sexual harassment in Count IV.  It is so ordered.

(11)  ■  [For further detail see order on the reverse side of the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

RT/AHS

courtroom deputy's initials

number of notices

AUG 30 2004
date docketed

docketing deputy initials

date mailed notice

CLERK, U.S. DISTRICT COURT

2004 AUG 27 PM 3:28

FILED-CBT

Date/time received in central Clerk's Office

mailing deputy initials

**Document Number**

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PAUL WOOLNER AND SUSAN WOOLNER, ) | **DOCKETED** |
| ) | |
| ) | Case No. 01 C 6043 |
| **Plaintiffs,** ) | AUG 3 0 2004 |
| v. ) | |
| ) | **Judge Blanche M. Manning** |
| FLAIR COMMUNICATIONS AGENCY, INC., ) | |
| AND LEE F. FLAHERTY, ) | |
| ) | |
| **Defendants.** ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Paul and Susan Woolner (collectively, "the Woolners") brought this action against their former employer, Flair Communications Agency, Inc. and its owner, Lee Flaherty (collectively, "Flair"). Mr. Woolner asserts discrimination and retaliation claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. (Count I) and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/8-111(C) (Count II). Ms. Woolner alleges hostile environment sexual harassment and retaliation based on sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Count IV) and the IHRA (Count V). Additionally, the Woolners both assert claims for breach of contract and promissory estoppel under Illinois law (Counts III and VI). The present matter comes before this Court on Flair's Motion for Summary Judgment. For the reasons set forth herein, the Court GRANTS this motion in part as to Counts I, III, and VI in their entirety and as to the retaliation claim in Count IV but DENIES the motion as to Ms. Woolner's claim for hostile environment sexual harassment in Count IV.[1]

---

[1]     In a prior Minute Order, this Court GRANTED Flair's motion to dismiss Counts II and V.

# BACKGROUND[2]

Flaherty is the founder and sole owner of Flair, a marketing company located in Chicago, Illinois. The Woolners, husband and wife, are former employees of Flair, both of whom were terminated in December of 1998. Prior to working at Flair they did "freelance" work for Flair and other marketing/advertising agencies. Flair hired Mr. Woolner first in May of 1990 and Ms. Woolner in June of 1995. Although neither Woolner had a written employment contract, they both allege that Flair promised that their employment would be "long-term."

The Woolners brought this action after Flair terminated their employment for alleged deficiencies in their job performance. The Woolners contend that they were fired based on Mr. Woolner's age (50) and Ms. Woolner's complaints about sexual harassment. The Woolners allege that Ms. Woolner was sexually harassed on several occasions between October 1997 and December 1998:

- in October of 1997, Flaherty gave her a gold bracelet and then "hugged" her;
- on July 31, 1998, Flaherty compared a map of the state of Florida with a "dildo";
- on four occasions in August through October of 1998, Flaherty "leaned closely over" Ms. Woolner while she was working at her computer and touched her in a "sexually offensive manner"; and
- near the end of 1998, Flaherty "hugged" Ms. Woolner.

The Woolners also allege that Flaherty sexually harassed other female employees when he allegedly:

- "dropp[ed] his pants to the floor in front of female flair employees";

---

[2]     The facts in the Background section are derived from the parties' Local Rule 56.1 statements and other pleadings. The facts in Flair's Local Rule 56.1(a)(3) statement that the Woolners did not controvert in their Local Rule 56.1(b)(3)(A) statement are deemed admitted for purposes of this motion. Schultz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992). Likewise, the facts that the Woolners provided in their Local Rule 56.1 statement that Flair did not controvert are deemed admitted. Id.

- gave other female Flair employees jewelry and then solicited them for sex; and
- leaned closely over" at least two other female employees while working and touched them in a "sexually offensive manner."

Four months after Ms. Woolner allegedly complained about the sexual harassment, Flair terminated the Woolners based on their alleged poor work performance. The Woolners then brought the instant action.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). A genuine issue of material fact is one that might affect the outcome of the lawsuit, and factual disputes that are irrelevant will not be considered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the court must construe the alleged facts in a light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962); Dale v. Chicago Tribune Co., 797 F.2d 458, 460 (7th Cir. 1986).

The moving party carries the initial burden of establishing that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Becker v. Tennenbaum Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party must do more than "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986), and may not merely rest upon the allegations or denials in its pleading, but instead must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. If the evidence presented is "merely colorable" or is not "significantly probative," summary judgment may be granted. Id. at 250-51 (citations omitted). The court considers the record as a whole, and draws all reasonable inferences in the light most favorable to the nonmoving party. Regner v. City of Chicago, 789 F.2d 534, 536 (7th Cir. 1986).

Courts are cautious in granting summary judgment in employment discrimination cases because often issues of intent and credibility are involved. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993); McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 370-71 (7th Cir. 1992). Summary judgment is inappropriate if the court must balance conflicting indications of motive and intent. Stumph v. Thomas & Skinner, Inc., 770 F.2d 93, 97 (7th Cir. 1985). An employer can only prevail at the summary judgment stage if the record shows that a reasonable trier of fact must conclude that the employment decision was not based on discrimination. Veprinsky v. Fluor Daniel, Inc., 87 F.3d 881, 893-94 (7th Cir. 1996).

# ANALYSIS

Flair seeks summary judgment on: (I) Mr. Woolner's age discrimination claim,

(II) Ms. Woolner's hostile environment sexual harassment claim, (III) both Woolners' retaliation

claims; and (IV) their breach of contract claims. The Court will discuss each of these contentions

in turn.

## I.     ADEA Claim

The ADEA prohibits employers from discriminating against employees, who are over 40

years of age, based on the employees' age, 29 U.S.C. § 631(a), with respect to compensation,

terms, conditions, or privileges of employment. Id. at § 623(a). To maintain a claim under the

ADEA, employees must establish that they would not have suffered adverse treatment "but for"

the employer's motive to discriminate based on the employees' age. Taylor v. Canteen Corp., 69

F.3d 773, 779 (7th Cir. 1995). To make a showing of discrimination to defeat a motion for

summary judgment, a plaintiff may present either direct or indirect evidence of age

discrimination. Id.

Because Mr. Woolner has not put forth any direct evidence of age discrimination, this

Court will apply the indirect burden-shifting method of proof set forth in McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973).[3] See Sirvidas v. Commonwealth Edison Co., 60 F.3d 375,

377 (7th Cir. 1995); Schultz v. General Elec. Capital Corp., 37 F.3d 329, 333 (7th Cir. 1994).

Under this method, a plaintiff must first establish a prima facie case of age discrimination by

---

[3]     The fact that a Flair manager admitted that the "advertising industry [is] basically
a young industry," is not direct evidence that Flair considered Mr. Woolner's age in deciding to
terminate him. This is particularly true given that Flair replaced Mr. Woolner (age 50) with an
employee who was 42 years old, who also fell within the scope of the ADEA.

showing that: (1) he was a member of the protected age group; (2) he was performing to his employer's legitimate expectations; (3) he was subject to materially adverse employment actions; and (4) younger employees were treated more favorably.[4] Sirvidas, 60 F.3d at 377.

Once made, the prima facie case creates a rebuttable presumption of discrimination, and the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff. Taylor, 69 F.3d at 779. If the employer articulates a nondiscriminatory rationale for the employment decision, the burden of production shifts back to the plaintiff to prove that the rationale is a pretext, i.e. a lie, sham, phony explanation, which masks the employer's intentional discriminatory animus. Id. at 779-80. The plaintiff can demonstrate a pretext by producing direct or circumstantial evidence indicating that the decision was motivated by discriminatory animus or "is unworthy of credence." Rand v. CF Indus., 42 F.3d 1139, 1145 (7th Cir. 1994).

Here, Flair contends that Mr. Woolner has failed to establish an ADEA claim because he has not presented evidence that: (A) he was replaced by a "substantially" younger employee; (B) he satisfactorily performed his job; and (C) even if he established a prima facie case, he has not shown that Flair's legitimate proffered reason for terminating him was pretextual. Because the Court finds that Mr. Woolner has not presented sufficient evidence to show that he was replaced by a "substantially" younger employee, the Court will only discuss Flair's first contention.

To meet the fourth prong of the McDonell Douglas test for the ADEA, the plaintiff must show that "substantially younger" employees were treated more favorably. Hartley v. Wisconsin

---

[4]     In contesting a motion for summary judgment, the plaintiff need not establish proof which would allow him to prevail on the merits, only that there is a genuine issue of material fact with regard to each element. See Lindsey v. Baxter 1267 Healthcare Corp., 757 F. Supp. 888, 893 n.9 (N.D. Ill.1991).

Bell, Inc., 124 F.3d 887, 892-93 (7th Cir. 1997). In the context of an employment termination case, the fact that the employer replaced the plaintiff with "someone substantially younger is a reliable indicator of age discrimination." Balderston v. Fairbanks Morse Engine Div. of Colec Idus., 328 F.3d 309, 321-22 (7th Cir. 2003). Setting forth a bight-line rule, the Seventh Circuit equates "substantially younger" as at least a ten year age difference. Id. An age "disparity less than ten years is 'presumptively insubstantial.'" Kariotis v. Navistar Int'l Trans. Corp., 131 F.3d 672, 677 n.1 (7th Cir. 1997) (quoting Hartley, 124 F.3d at 893). If the age difference is less than ten years, the plaintiff may still "present a trial claim if [he] directs the court to evidence that [his] employer considered [his] age to be significant" in the making of the contested employment decision. Hartley, 124 F.3d at 893.

Following the above cases, courts strictly construe the ten year rule. See Raude v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000) (affirming summary judgment for the employer where the alleged similarly situated employees were only seven and 9.5 years younger than the plaintiff); Pitasi v. Gartner Group, Inc., 184 F.3d 709, 717 (7th Cir. 1999) (affirming summary judgment for the employer, the Seven Circuit held that an eight year age difference "is not significant enough . . . to create a reasonable inference of age discrimination); Dell'Aringa v. SBC Global Svs, Inc., 2002 WL 31109447 at *6 (N.D. Ill. Sept. 20, 2002) (granting summary judgment for the employer because the alleged similarly situated employee was only nine years younger than the plaintiff); Smolek v. Village of Palos Park, 2001 WL 699953, at *4 (N.D. Ill. June 21, 2001) (in rejecting the plaintiff's contention that "nine years and ten months is close enough" to ten years, the court held that such an argument would "undermine the Seventh Circuit's attempt to create a bright line test for determining whether an allegation of age disparity is sufficient to give rise to a claim for discrimination").

Here, Mr. Woolner was 50 years old when Flair terminated him and replaced him with a 42 year-old employee. Therefore, because the age disparity is only 8 years, the ADEA claim must be dismissed unless Mr. Woolner presents direct evidence that Flair considered his age a significant factor in its employment decision. As discussed above, however, Mr. Woolner has offered no such direct evidence. Accordingly, this Court GRANTS the Motion for Summary Judgment as to Count I (the ADEA claim).

## II.     Hostile Work Environment Claim

Flair also moves for summary judgment on Ms. Woolner's hostile work environment claim (Count IV) on the grounds that: (1) she has failed to present sufficient evidence to establish her claim; and (2) even if a hostile work environment existed, Flair took appropriate preemptive and corrective measures. Before addressing these issues, however, the Court must first determine precisely what incidents this Court may consider in assessing whether a hostile work environment existed at Flair.

### A.     Alleged Incidents of Sexual Misconduct

Ms. Woolner contends that the Court should consider the following incidents of alleged sexual harassment in assessing her hostile environment claim: (1) the six instances of Flaherty sexually harassing Ms. Woolner; and (2) Flaherty's alleged harassment of other women employees. Flair, however, contends that this Court should only consider three incidents of alleged sexual misconduct because: (1) Ms. Woolner only alleged three acts in her EEOC charge and in her deposition; and (2) sexual harassment of other employees is not admissible under Federal Rules of Evidence 404(b) and 403. The Court will discuss each of these contentions in turn.

### 1. Ms. Woolner's Deposition Testimony and EEOC Charge

In her Memorandum Opposing Summary Judgment, Ms. Woolner alleges that she was sexually harassed on several occasions between October 1997 and December 1998:

- in October of 1997, Flaherty gave her a gold bracelet and then "hugged" her;
- on July 31, 1998, Flaherty compared a map of the state of Florida with a "dildo";
- on four occasions in August through October of 1998, Flaherty "leaned closely over" Ms. Woolner while she was working at her computer and touched her in a "sexually offensive manner"; and
- near the end of 1998, Flaherty "hugged" Ms. Woolner.

Although denying all of the above allegations, Flair contends that this Court should only consider three of the above acts in determining the hostile environment claim because Ms. Woolner only mentioned three acts in her deposition and in her EEOC charge.

A plaintiff in an employment discrimination case may not defeat a motion for summary judgment "by submitting an affidavit containing conclusory allegations which contradict plain admissions in [a] prior deposition." Adusumilli v. City of Chicago, 164 F.3d 353, 360 (7th Cir. 1998). "[W]here a deposition and affidavit are in conflict, the affidavit is to be disregarded" and the court should only consider the deposition, "unless it is demonstrat[ed] that the statement in the deposition was mistaken." Amadio v. Ford Motor Co., 238 F.3d 919, 926 (7th Cir. 2001).

Here, in her deposition, Ms. Woolner testified that she was subjected to three incidents of sexual harassment by Flaherty: (1) in October of 1997, he gave her a gold bracelet and then hugged her (Dep. Tr. at 97, Ex. B. Def's Appx); (2) in July of 1998, while she was sitting at her desk, he "closely leaned over" her and rubbed his "private part" on her back (id. at 106-08); and (3) in late July/early August of 1998, he compared a map of Florida to a "dildo." (Id. at 119). After describing these three incidents, Ms. Woolner was asked if there were any other incidents she believed constituted sexual harassment. (Id. at 121-22.) In response, she answered "no."

-9-

(Id.) Consequently, based on the above Seventh Circuit decisions, this Court will not consider the additional incidents of sexual harassment which were disclosed for the first time in Ms. Woolner's affidavit submitted in opposition to the motion for summary judgment.[5]

## 2.    Harassment Against Other Female Employees

Next, the Court turns to Flair's contention that Flaherty's alleged sexual harassment of other female employees is not admissible under Federal Rules of Evidence 404(b) and 403.

Rule 404(b) provides that:

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Applying Rule 404(b) in the context of sexual harassment/hostile environment cases, courts generally hold that while evidence of the defendant's alleged sexual harassment of other employees cannot be used to show that the defendant harassed the plaintiff, it is admissible to show discriminatory intent, preparation, or absence of mistake.  See Wilson v. Muckalla, 303

---

[5]    Additionally, Flair contends that the incident of Flaherty "rubbing" his private part on Ms. Woolner should not be considered because she did not specifically mention it in her EEOC charge.  As a general rule, a plaintiff may only include claims in her judicial complaint that were included in the EEOC charge.  Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994).  This rule serves the dual purpose of allowing the EEOC and the employer an opportunity to settle the dispute and to give the employer warning of the complained of conduct. Id.  Because EEOC charges are frequently completed by laypersons and not lawyers, however, a claim that was not asserted in the EEOC charge may still be cognizable in a judicial complaint if the claim is "like or reasonably related" to the allegations in the EEOC charge or could reasonably be expected to grow out of an EEOC investigation.  Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 167 (7th Cir. 1976).  Here, because the alleged touching of Ms. Woolner by Flaherty's private part is reasonably related to her other allegations of sexual harassment, it is therefore irrelevant that it was not mentioned in her EEOC charge.

F.3d 1207, 1217 (10th Cir. 2002); Heyne v. Caruso, 69 F.3d 1475, 1479-80 (9th Cir. 1995).

Rule 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Because courts look to all the "surrounding circumstances" in determining whether sexual harassment was pervasive, evidence of sexual harassment directed at other employees is relevant in assessing a hostile environment claim. See Valadez v. Uncle Julio's of Ill., Inc., 895 F. Supp. 1008, 1013 (N.D. Ill. 1995) (denying summary judgment of a "hostile environment sexual harassment" claim, the court considered "evidence of sexual harassment directed at other employees of the same sex as plaintiff"). See also Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997) (evidence of sexual harassment of women employees other than the plaintiff was relevant to show a pervasive or continuing pattern of sexual harassment in a hostile environment claim).

Here, Ms. Woolner contends that the following allegations of sexual harassment of other Flair employees by Flaherty is admissible to prove their hostile environment claim:

- Flaherty "dropping his pants to the floor in front of female Flair employees";
- in September of 1997, a month before a similar incident with Ms. Woolner, Flaherty gave two other female Flair employees jewelry and then solicited them for sex; and
- Flaherty allegedly "leaned closely over" other female employees while they were working at their desks and touched at least one in a "sexually offensive manner."

Given that the above events are very similar to Flaherty's alleged sexual harassment of Ms. Woolner and occurred near the time of her alleged harassment, the Court finds that they are relevant to show intent, motive, or absence of mistake under Rule 404(b) and in examining whether the alleged sexual harassment was pervasive.

Accordingly, in determining whether Ms. Woolner has put forth sufficient evidence to avoid summary judgment on her hostile environment claim, the Court will consider the above three allegations of harassment to Ms. Woolner and the incidents of alleged harassment of other female employees.

**B.** **Prima Facie Case of Hostile Environment**

To establish a prima facie case of hostile environment sexual harassment, a plaintiff must show: (1) harassment because of her membership in a protected class, Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 81 (1997), that (2) was severe and pervasive enough to alter the plaintiff's working conditions, Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986), (3) which was unwelcome, id. at 68, and (4) the employer did not act promptly to effectively correct or prevent the harassment. Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 535-36 (7th Cir. 1993).

In Meritor, the Supreme Court held that "[f]or ... harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." 477 U.S. at 67. The Court further explained in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-17 (2002), that "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, 'that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." A discriminatory abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Harris v. Forklift, 510 U.S. 17, 22 (1993).

While the Supreme Court has been sympathetic to harassment claims, it has also

expressed the desire to limit Title VII's applicability to conduct which is actually hostile and discriminatory: "the plaintiff must always prove that the conduct at issue was not merely tinged with offensive connotations, but actually constituted *discrimination* because of [membership in the protected class]." Oncale, 523 U.S. at 81 (emphasis in original).

In determining whether conduct is severe and pervasive enough to alter the conditions of employment and create a hostile work environment, courts consider both the actual effect of the conduct on the plaintiff (the subjective test) and what the effect would be on a reasonable person in the plaintiff's position (the objective test). Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 674 (7th Cir. 1993).

Whether conduct is objectively hostile or abusive must be determined "by looking [at the conduct under] all the circumstances." Harris, 510 U.S. at 23. Factors that are relevant in determining whether a reasonable person would find conduct hostile are the frequency of the conduct, its severity, whether it is "physically threatening or humiliating, or a mere offensive utterance," and whether it interferes with the employee's work performance. Id. The Seventh Circuit has held that isolated and/or off-hand remarks or incidents are insufficient to establish a hostile work environment. Filipovic v. K&K Express Sys., Inc., 176 F.3d 390, 398 (7th Cir. 1999) (four national origin related comments made over the course of more than a year not sufficient to create a hostile environment); Rabinovitz Pena, 89 F.3d 483, 489 (7th Cir. 1996) ("an employee may not be unreasonably sensitive to his working environment"); Saxton, 10 F.3d at 535 ("inaccessibility, condescension, impatience, and teasing" were "'merely offensive'"); North v. Madison Area Assn. for Retarded Citizens – Dev. Centers Corp., 844 F.2d 401, 409 (7th Cir. 1988) (sporadic use of racial epithets and slurs were insufficient to support a Title VII claim). Repeated instances of such conduct, however, may be aggregated to support a hostile

environment claim. See,e.g., Hostetler v. Quality Dining, Inc., 218 F.3d 798, 808 (7th Cir. 2000) ("[t]here is no magic number of incidents required to establish a hostile environment").

Here, after carefully reviewing the parties' submissions, this Court finds that Ms. Woolner has put forth the following admissible evidence in support of her hostile environment claim:

**Acts Directed Toward Herself**

- in October of 1997, Flaherty gave her a gold bracelet and then roughly hugged her;
- in July of 1998, while she was sitting at her desk, Flaherty "closely leaned over" her and rubbed his "private part" on her back; and
- in July/August of 1998, Flaherty compared a map of the state of Florida a "dildo";

**Acts Against Other Female Employees**

- Flaherty "dropp[ed] his pants to the floor in front of [other] female flair employees";
- in September of 1997, a month before the incident with Ms. Woolner, Flaherty gave two other female Flair employees jewelry and then solicited at least one of these female employees for sex;
- Flaherty allegedly "leaned closely over" other female employees while working and touched at least one of them in a "sexually offensive manner"

Viewing these facts in favor of Ms. Woolner and considering the totality of the circumstances, this Court finds that she has put forth sufficient evidence to show her work environment at Flair was both subjectively and objectively hostile, altering the conditions of her employment and creating an abusive work environment.

## C. Preemptive and Corrective Measures

Flair further contends that even if a hostile work environment existed, summary judgment is appropriate under Burlington Industry, Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boston, 524 U.S. 775 (1998) ("the Ellerth/Faragher Affirmative Defense") because it "exercised reasonable care to prevent sexually harassing behavior, [which Ms.] Woolner

unreasonably failed to take advantage of." The Ellerth/Faragher Affirmative Defense, however, does not apply when the person doing the harassing "may be treated as [the employer's] proxy," which includes the owner and/or president of the employer. Faragher, 524 U.S. at 789-90. Here, because Flaherty was the founder, sole owner, and president of Flair, the Ellerth/Faragher Affirmative Defense is not applicable in this case.

Accordingly, this Court DENIES summary judgment as Ms. Woolner's the hostile environment claim in Count IV.

## III. Retaliation

Flair also seeks summary judgment on the Woolners' retaliation claims on the grounds that the Woolners have failed to present sufficient evidence to establish a prima facie case, and even if they have, Flair has shown a legitimate reason for terminating their employment.

The Seventh Circuit has established "two ways" for a plaintiff to make a prima facie case for retaliation under Title VII – "the direct method and the indirect method." Durkin v. City of Chicago, 341 F.3d 606, 613 (2003).[6] Under the direct method, the plaintiff must present evidence of: "(1) a statutorily protected activity; (2) an adverse action by the employer; and (3) a causal connection between the two." Sitar v. Indiana Dept. of Trans., 344 F.3d 720, 728 (7th Cir. 2003).

Where the plaintiff "has no actual evidence of . . . retaliation, but just some suspicious

---

[6]     Title VII (42 U.S.C. § 2000e-3(a)) provides that:
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

circumstances," she may use the indirect method, which is modeled after McDonnell Douglas. Stone v. City of Indianapolis Public Utilities Div., 281 F.3d 640, 643 (7th Cir. 2002). Under the indirect method, the plaintiff must show that: "(1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." Sitar, 344 F.3d at 728. If the plaintiff meets these requirements, the burden shifts to the defendant to articulate a legitimate reason for its actions. Id. If the defendant meets this burden, then the plaintiff must show that its proffered reason is pretextual. Id. If the plaintiff cannot show pretext, it cannot proceed with its retaliation claim and summary judgment is appropriate. Id.

Here, Flair contends that Ms. Woolner has not established a prima facie case under either the direct or indirect method because she failed to show that: (1) she specifically complained to management about Mr. Flaherty's sexual harassment, and therefore, she cannot show that she engaged in a protected activity; (2) there is any causal connection between her alleged complaint and her termination; and (3) she was treated less favorably than similarly situated employees who did not engage in the protected activity.[7] The Court will address each of these contentions in turn.

---

[7]     Mr. Woolner's claim for retaliation appears to stem from the allegation that he was terminated because his wife complained about sexual harassment. Because he did not actually complain, he cannot prevail. Moreover, Mr. Woolner has not put forth any evidence demonstrating the other elements of a prima facie case.

## A.     Complaint Requirement

To prevail on a claim for retaliation under either the indirect or direct method, it is "axiomatic" that the plaintiff prove that she actually complained about the alleged harassment. Durkin, 341 F.3d 614-15 ("[a]n employer cannot retaliate if there is nothing for it to retaliate against"). The employee must specifically complain about the sexual harassment – vague and general complaints do not suffice. See id. An employee must do more than complain that "she felt picked on," she must specifically state that the harassment is based on her "sex or gender, which is what Title VII requires." Sitar, 344 F.3d at 727. The reasoning behind this requirement is that "[a]n employee can honestly believe that she is the object of [harassment], but if she never mentions it, . . . [the] employer cannot retaliate when it is unaware of any complaints." Id.

Here, Flair contends that, based on Ms. Woolner's deposition, she failed to make a complaint sufficient to invoke the protections of Title VII. After carefully reviewing Ms. Woolner's deposition, this Court finds that she did not specifically complain about the alleged harassment and thus, cannot bring a claim for retaliation.[8]

For example, at her deposition, when asked if she complained about the October 1997 incident, where Flaherty allegedly gave her a gift and then "hugged" her, Ms. Woolner stated that she told Flaherty that he was "hurting" her. (Dep. Tr. at 101, Ex. B. Def's Appx.)   She also said that shortly after the October 1997 incident, at her year-end review, she told her direct manager (Stan Hardwick) that Flaherty "was an at-risk person and that his aggressive behavior towards people was worrisome." (Id. at 102.)  When asked if she said anything else to Hardwick or explained what she meant regarding an "at-risk person," Ms. Woolner replied, "No. Mr.

---

[8]     In reaching this finding, for the reasons discussed above, the Court disregards statements in Ms. Woolner's affidavit which conflict with  her deposition testimony.

Hardwick knew exactly what I was talking about." (Id. at 103.) She, however, admitted that she did not "discuss the October 1997 incident specifically" with Hardwick and did not specifically mention the incident to anyone else. (Id. at 104.)

Similarly, Ms. Woolner testified that although she did not go into specific detail, she had one conversation with Hardwick regarding the July 1998 incident where Flaherty allegedly "leaned closely over" Ms. Woolner while she was working at her computer and touched her in a "sexually offensive manner" (e.g., with his private part while sexually aroused). Immediately after the incident, Ms. Woolner told Hardwick that "something had to be done about [Flaherty] and the work we were doing," and that she "felt he should not come down to our floor to work." (Id. at 113.) In response, Hardwick allegedly stated that "it [meaning the current project] will all be over soon" and that "he knew that it was stressful." (Id. at 113.)

A week after the July 1999 incident, Ms. Woolner complained to Hardwick regarding Flaherty and another female employee. Ms. Woolner stated that "Mr. Flaherty's working style of leaning over women . . . was an aggressive and offensive way to work and that . . . it needed to be addressed." (Id. at 115.) In response, Hardwick stated that he knew Flaherty could be very hard to work with because he was "verbally abusive" to all employees. (Id. at 117-18.)

In sum, Ms. Woolner testified that the above three conversations were the only complaints that she made regarding her alleged harassment by Flaherty. (Id. at 126-27.) Unfortunately, for Ms. Woolner, these conversations were too vague in that she never specifically relayed even the most general of details of the alleged sexual harassment by Flaherty. Therefore, because she never specifically complained of the sexual nature of her troubles with

Flaherty, Flair never had notice of the alleged harassment.[9]

## B.    Causal Connection

To establish a causal connection, a plaintiff must show that her protected activity (e.g., complaining about the sexual harassment) and her termination "were not wholly unrelated." See Franzoni v. Hartmarx Corp., 300 F.3d 767, 772 (7th Cir. 2002). To meet this requirement, the plaintiff must put forth specific evidence showing that her complaint led to or was a major factor in her termination – "speculation" will not suffice. See Haywood v. Lucent Tech., Inc., 323 F.3d 524, 532 (7th Cir. 2003). Although temporal proximity is not strictly determinative, "the employer's adverse employment action should follow fairly soon after the employee's protected expression." Franzoni, 300 F.3d at 773. The Seventh Circuit has held that a four month gap between the protected expression and the adverse employment action negates any causal inference. See Filipovic v. K&R Express Sys., Inc., 176 F.3d 390, 398 (7th Cir. 1999).

Here, Ms. Woolner testified that her last discussion with Hardwick regarding her problems with Flaherty was in late July or early August of 1998. Flair terminated her employment, allegedly because of this conversation, on December 4, 1998, four months after she allegedly complained to Hardwick. Other than the four month time sequence, which is not close enough in time to infer causation, Ms. Woolner has not put forth any evidence to show that her termination was in any way related to her alleged complaints. Accordingly, this Court finds that the causation requirement is not met.

---

[9]      The fact that Ms. Woolner never specifically complained would usually end the Court's analysis. Unlike the typical harassment case, however, the alleged harasser (Flaherty) was the sole owner and president of Flair. Therefore, a fair argument can be made that Flair did have notice of the harassment, and even if Ms. Woolner had complained, nothing would have been done to remedy the situation. Accordingly, this Court will address Flair's other contentions.

## C.    Similarly Situated Employees

To prevail under the indirect method, the plaintiff must establish "only [she], and not any otherwise similarly situated employee <u>who did not complain</u>," about the alleged harassment, was terminated. <u>Wyninger v. New Venture Gear, Inc.</u>, 361 F.3d 965, 981 (7th Cir. 2004) (emphasis added). To show that another employee was "similarly situated" the plaintiff must show that the other employee was "directly comparable to [the plaintiff] in all material respects . . . . There must be no meaningful distinctions between [them]." <u>Little v. Ill. Dept. of Revenue</u>, 2002 WL 992623, at *4 (N.D. Ill. May 15, 2002), <u>aff'd</u>, 369 F.3d 1007 (7th Cir. 2004). Additionally, the plaintiff must show that "the similarly situated employee [was] disciplined, or not, by the same decision maker who imposed [the] adverse employment action on the plaintiff." <u>Id.</u> at 1012.

Here, Ms. Woolner contends that three Flair employees (Omichinski, Tubay, and Herr) are similarly situated to her. Omichinski and Tubay, however, complained to Hardwick about the alleged harassment. Thus, they are not similarly situated. As for Herr, after allegedly being harassed by Flaherty, she supposedly complained to Ms. Woolner but not to management. Ms. Woolner, however, passed along her grievance to Hardwick. Beyond the fact that Herr never complained directly to management, Ms. Woolner has not offered any evidence to show that her and Herr were similarly situated. Consequently, without more, this Court finds that Ms. Woolner has failed to present any evidence that she was treated less favorably than a similarly situated employee who did not complain.

Accordingly, this Court GRANTS summary judgment as to the retaliation claim because Ms. Woolner has failed to present evidence that: (1) she specifically complained to management about Mr. Flaherty's alleged sexual harassment; (2) there is any causal connection between her alleged complaint and her termination; and (3) she was treated less favorably than similarly

situated employees who did not complain about Flaherty's conduct.

## IV. State Law Claims

Flair has also moved for summary judgment on Counts III and VI, in which the Woolners allege breach of contract, breach of implied covenant of good faith, and promissory estoppel under Illinois law. The Woolners contend that when Flair hired them it orally agreed that their employment was to be a "long-term job." (Mem. in Opp. at 32-33.) Unfortunately for the Woolners, agreements for "long-term" employment fall within the statute of frauds. See Kercher v. Forms Corp. of America, Inc., 630 N.E.2d 978, 981 (Ill. App. Ct. 1994). The promissory estoppel claim also fails because the doctrine of promissory estoppel is not an exception to the statue of frauds. Evans v. Flour Dist. Co., Inc., 1985 WL 1998, at *4 (N.D. Ill. June 28, 1985) (citing Illinois cases). As for the claim for implied covenant of good faith, Illinois does not recognize claims for breach of an implied covenant. Id. at *5. Accordingly, this Court GRANTS the motion for summary judgment as to Counts III and VI.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment [52-1] as to all counts and claims except for Ms. Woolner's claim for hostile environment sexual harassment in Count IV. It is so ordered.

ENTER:

Blanche M. Manning
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATED: _8/26/04_